IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JOSEPH THOMAS EDE,

       Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No. C13-1034

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.    **INTRODUCTION** ........................................ 2

II.   **PRINCIPLES OF REVIEW** ................................ 2

III.  **FACTS** ................................................ 4
    A.   *Ede's Education and Employment Background* .............. 4
    B.   *Administrative Hearing Testimony* ...................... 4
        1.   *Ede's Testimony* ................................ 4
        2.   *Vocational Expert's Testimony* .................... 5
    C.   *Ede's Medical History* ................................ 6

IV.  **CONCLUSIONS OF LAW** .................................. 10
    A.   *ALJ's Disability Determination* ........................ 10
    B.   *Objections Raised By Claimant* ........................ 11
        1.   *The Listings* .................................... 12
            a.   *Listings §§ 12.02 and 12.04* .................. 12
            b.   *Listing § 11.03* ............................ 17
        2.   *Mitigating Factors and Noncompliance* .............. 19
        3.   *Dr. Piekenbrock's Opinions* ...................... 21
        4.   *Credibility Determination* ........................ 24
        5.   *Hypothetical Question* .......................... 28

V.   **CONCLUSION** ........................................ 29

VI.  **ORDER** .............................................. 30

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Joseph Thomas Ede on November 13, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Ede asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Ede requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the

decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Ede's Education and Employment Background

Ede was born in 1964. At the administrative hearing, Ede testified that he quit school in the ninth grade to go to work, but later earned his GED. Ede's past relevant work includes jobs as a cleaner, truck driver, and press operator.

### B. Administrative Hearing Testimony

#### 1. Ede's Testimony

At the administrative hearing, Ede testified that he suffers from two types of seizures, grand mal and petit mal. Ede described losing consciousness with grand mal seizures, and then needing a week to recover from such seizures. During the recovery period, Ede explained that "I'm very fatigued. I have to go to sleep for a while. . . . I'm not real sharp. I'm not too sharp to begin with, but after a seizure I'm just kind of -- I don't know if my brain is with me. My memory is worse than ever. I can't concentrate, and it takes me a week or something for me to begin focusing again, the way I did before the seizure."[1] Ede's attorney inquired about the frequency of the seizures:

> Q: And so those -- you had the seizures six days ago -- one you went to Findley for six weeks ago. Prior to that when was the last time you had a grand mal?
> A: I'm not sure. Probably a week before that. I have a few a month.
> Q: How often do you go to the hospital?
> A: Probably every two months. Every three months.

---

[1] Administrative Record at 44.

Q:      Why don't you go to the hospital more for seizures?
A:      Probably one thing -- I just try to work it out myself.
        I know that eventually I'll come through.

(Administrative Record at 45.) Ede also described his petit mal seizures. Ede explained that he does not lose consciousness with a petit mal seizure, but gets hot, sweaty, and needs to lie down. After a couple hours of rest, he is okay. Ede estimated that he has four or five petit mal seizures each month.

Next, Ede discussed his difficulties with memory. He testified that he "can't remember much." Specifically, he stated that "I can't remember -- I don't know my birthday. What year is it? It takes me a minute to remember if it's 2011 or 2012, and I'll write 2011 and stuff."[2] Ede also stated that he has difficulty remembering to take his medications and remembering to go to his doctor's appointments.

Ede also discussed his difficulties with depression. Ede testified that "I would like to put a bullet through my head about four or five days a month. I want to die a lot. That's how it affects me."[3] Ede also stated that sometimes he has difficulty getting along with other people.

### 2.    Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual who is:

> limited to tasks that could be learned in 30 days or less involving no more than simple work related decisions with only occasional workplace changes. This hypothetical individual should have no more than occasional interaction with the public, coworkers, or supervisors. This hypothetical individual can only occasionally climb, balance, stoop, kneel, crouch, crawl. This individual can have no more than occasional exposure to vibrations, occasional exposure to

--------

[2] *Id.* at 48.

[3] Administrative Record at 49.

> noise, should have no more than occasional exposure to
> pulmonary irritants such as fumes, odors, dust, and gases.
> This individual can never climb ropes, ladders, or scaffolds,
> and this individual is precluded from working around heights
> or fast, dangerous machines.

(Administrative Record at 55.) The vocational expert testified that under such limitations,
Ede could perform his past work as a cleaner. The ALJ added two additional limitations
to the initial hypothetical question for the vocational expert: (1) in addition to regularly
scheduled work breaks during a typical 40-hour workweek, the individual would need to
take three additional unscheduled breaks of 15 minutes length each week; and (2) the
individual would have to leave work at some point during a workday once each month due
to his or her impairments. The vocational expert testified that under such limitations, Ede
could still perform his past work as a cleaner. Finally, the ALJ inquired whether an
individual who needed 3 unscheduled work breaks per day and/or would work at a slow
pace for one-third of the day could perform Ede's past work. The vocational expert
responded that under such circumstances, Ede would be precluded from his past relevant
work and any other competitive employment.

### C. Ede's Medical History

On September 23, 2010, Ede met with his treating psychiatrist, Dr. Thomas
Piekenbrock, M.D., for a scheduled four-month psychiatric medication review.
Dr. Piekenbrock noted that Ede was "remarkably stable and admits that the Lexapro has
cleared up a lot of his thoughts of depression."[4] Dr. Piekenbrock also noted that Ede was
working part-time in a housing development doing maintenance, and seemed to be enjoying
the work. Dr. Piekenbrock diagnosed Ede with major depressive disorder and grand mal
seizure disorder. Dr. Piekenbrock recommended that Ede continue his medication as
treatment.

---

[4] Administrative Record at 299.

6

Ede returned to Dr. Piekenbrock on October 28, 2010. Ede informed Dr. Piekenbrock that he was "doing well up until about two weeks ago, when he lost his job and is unemployed, [and is] still waiting to hear from social security."[5] Dr. Piekenbrock indicated that Ede had been compliant with his medication. Dr. Piekenbrock diagnosed Ede with major depressive disorder, organic brain syndrome, and grand mal seizure disorder. Dr. Piekenbrock increased Ede's medication as treatment.

On April 1, 2011, Dr. Russell Lark, Ph.D., reviewed Ede's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Ede. On the Psychiatric Review Technique assessment, Dr. Lark diagnosed Ede with organic brain syndrome and major depressive disorder. Dr. Lark determined that Ede had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Lark determined that Ede was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. Dr. Lark concluded that:

> [The medical evidence of record] and [activities of daily living] indicate that [Ede] can handle daily responsibilities. His memory, attention, concentration, and pace may vary with his mood but are adequate for tasks not requiring sustained attention. The preponderance of evidence in file indicates that [Ede] is able to complete at least simple, repetitive tasks on a sustained basis.

---

[5] *Id.* at 298.

(Administrative Record at 342.)

On April 5, 2011, Dr. John May, M.D., reviewed Ede's medical records and provided DDS with a physical RFC assessment for Ede. Dr. May determined that Ede had no exertional, manipulative, visual, or communicative limitations. Dr. May further determined that Ede could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. May also found that Ede should avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, and poor ventilation. Dr. May opined that Ede should avoid even moderate exposure to hazards, such as machinery and heights. Dr. May concluded that:

> [Ede] has a history of a seizure d/o [("disorder").] . . . He was seen 1/17/09 and noted he had not had a seizure in 3 months. His Lamictal level at that time was 1 suggesting non compliance but could have been low due to his combination of medications. He was to monitor his seizures and return for further evaluation. He did not return until 4/29/10 at which time he was noted not to have had any further episodes of seizures. His seizure d/o does not meet or equal a listing and does not occur with frequency enough to warrant being unable to work. However, due to his history of abnormal EEGs and the actual documentation of a [history] of seizure d/o, he has been given a non exertional RFC.

(Administrative Record at 364.)

On June 9, 2011, Ede met with Dr. Piekenbrock for follow-up on his medication and condition. Dr. Piekenbrock opined that:

> [Ede] is a patient that has significant impairment and is diagnosed with Major Depressive Disorder, Organic Brain Syndrome, Grand Mal Seizure Disorder, and with all of the above there is an explosiveness that is typically the Organic Brain Syndrome type of all or none response. I sincerely believe he is disabled. I do not believe he is employable in any situation, not only because of his mood disability, which is very unstable, but also his mental functioning in an organic way.

8

(Administrative Record at 401.) Dr. Piekenbrock recommended that Ede continue his medication as treatment because "the Lexapro . . . seems to hold the mood into some kind of abeyance."[6]

Ede returned to Dr. Piekenbrock on October 10, 2011, for a medication check. Dr. Piekenbrock noted that "[Ede] states that if he takes Lexapro he feels a little better and in control. Without it, he is fearful he will hurt himself or others or become, in any event, violent."[7] Dr. Piekenbrock, again, opined that "I believe this man is totally unemployable and disabled."[8] Dr. Piekenbrock recommended that Ede continue his medication as treatment.

On February 9, 2012, Ede met with Dr. Piekenbrock for a scheduled review of psychotropic medication. Dr. Piekenbrock noted that Ede had a recurrence of his seizures, including a grand mal seizure the week before his appointment. Dr. Piekenbrock further noted that Ede "has been having them about every three months."[9] Dr. Piekenbrock opined that "[i]t certainly contributes to his inability to be gainfully employed."[10] Again, Dr. Piekenbrock recommended that Ede continue his medication as treatment.

On May 15, 2012, Ede returned to Dr. Piekenbrock for review of his medications. Dr. Piekenbrock found that Ede was "stable on medication taking it as prescribed."[11]

---

[6] Administrative Record at 401.

[7] *Id.* at 402.

[8] *Id.*

[9] Administrative Record at 403.

[10] *Id.*

[11] *Id.* at 404.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Ede is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is

'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Ede had not engaged in substantial gainful activity since February 9, 2010. At the second step, the ALJ concluded from the medical evidence that Ede had the following severe impairments: seizure disorder, major depressive disorder, and organic brain syndrome. At the third step, the ALJ found that Ede did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Ede's RFC as follows:

> [Ede] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform tasks learned [in] 30 days or less with simple work related decisions and few work place changes. [He] is limited to occasional interaction with the public, coworkers, or supervisors. He can occasionally climb, balance, stoop, kneel, crouch, and crawl, and should have no more than occasional exposure to vibrations, noise, or pulmonary irritants such as fumes, dusts, gases, etc. He cannot climb ladders[,] ropes[,] or scaffolds, and is precluded from working at heights or with fast/dangerous machines.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Ede could perform his past relevant work as a cleaner. Therefore, the ALJ concluded that Ede was not disabled.

### B. Objections Raised By Claimant

Ede argues that the ALJ erred in five respects. First, Ede argues that the ALJ erred in finding that he did not meet Listings §§ 12.02 and 12.04, and by failing to consider whether he meets Listing § 11.03. Second, Ede argues that the ALJ erred by failing to take into account mitigating factors with respect to his noncompliance in taking his anti-

seizure medication. Third, Ede argues that the ALJ failed to properly consider the opinions of his treating psychiatrist, Dr. Piekenbrock. Fourth, Ede argues that the ALJ failed to properly evaluate his subjective allegations of disability. Finally, Ede argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. The Listings

Ede argues that the ALJ erred in finding that he did not meet Listings §§ 12.02 and 12.04. Ede also argues that the ALJ erred by failing to consider whether he meets Listing § 11.03. Ede concludes that this matter should be remanded for further consideration of the listings.

#### a. Listings §§ 12.02 and 12.04

At step three of the five-step sequential analysis, an ALJ is required to determine whether a claimant's alleged impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant's impairment, in fact, meets one of the impairments in the "Listings," then the ALJ must find that he or she is disabled. Ede argues that the ALJ erred by not finding that he meets Listing §§ 12.02 and 12.04. Specifically, Ede argues that he meets Listing § 12.02 because he suffers from disorientation to time and place, memory impairment, emotional lability, and loss of measured intellectual ability; and he has marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. Similarly, Ede argues that he meets Listing § 12.04 because he has depressive syndrome characterized by adhedonia, appetite disturbance, sleep disturbance, decreased energy, difficulty concentrating or thinking, and thoughts of suicide; and he has marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.

Listing § 12.02 provides in pertinent part:

12.02 *Organic Mental Disorders*: Psychological or behavioral abnormalities associated with dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements of C are satisfied.

A.     Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

      1.     Disorientation to time and place; or

      2.     Memory impairment . . .

      6.     Emotional lability and impairment in impulse control; or

      7.     Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuro-psychological testing . . .

AND

B.     Resulting in at least two of the following:

      1.     Marked restriction of activities of daily living; or

      2.     Marked difficulties in maintaining social functioning; or

      3.     Marked difficulties in maintaining concentration, persistence, or pace; or

      4.     Repeated episodes of decompensation, each of extended duration; . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02(A)-(B).

Listing § 12.04 provides in pertinent part:

12.04 *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors

the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements of C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
        a.    Anhedonia or pervasive loss of interest in almost all activities; or
        b.    Appetite disturbance with change in weight; or
        c.    Sleep disturbance; or . . .
        e.    Decreased energy; or . . .
        g.    Difficulty concentrating or thinking; or
        h.    Thoughts of suicide; . . .
AND
B. Resulting in at least two of the following:
    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or
    3.    Marked difficulties in maintaining concentration, persistence, or pace; or
    4.    Repeated episodes of decompensation, each of extended duration; . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B).

The burden is on the claimant to show that his or her impairment meets or equals a listing. *Carlson v. Asture*, 604 F.3d 589, 593 (8th Cir. 2010) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). Furthermore, in order to meet a listing, "'an impairment must meet all of the listing's specified criteria.'" *Id.*; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.").

In considering Listing §§ 12.02 and 12.04, the ALJ determined that:

The undersigned has considered all of [Ede's] impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings. Since [Ede] shows no evidence of an impairment which meets or equals the criteria of a listed impairment or of a combination of impairments equivalent in severity to a listed impairment, disability cannot be established on the medical facts alone.

The severity of [Ede's] mental impairment does not meet or medically equal the criteria of listing 12.02 and 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, [Ede] has only mild restriction. [He] experiences no more than moderate difficulties in social functioning. With regard to concentration, persistence or pace, [Ede] has moderate difficulties. The extent of the limitations described on [Ede's] functioning is further discussed below in the residual functional capacity section of the decision. [Ede] has not experienced any episodes of decompensation during the relevant period within the definition of the regulations.

Because [Ede's] mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(Administrative Record at 14-15.)

Ede maintains that the ALJ incorrectly determined that he only has mild restriction of functioning in activities of daily living, and moderate difficulties in social functioning and concentration, persistence or pace. Instead, Ede asserts that he has marked restriction of functioning in those three functional areas.[12] However, Ede presents no evidence of, let alone, "medically documented persistence" of disorientation to time and place, memory impairment, emotional lability, loss of measured intellectual ability, or depressive syndrome.[13] Furthermore, in her decision, the ALJ thoroughly reviewed the medical evidence in this case, and correctly concluded that the medical evidence does not support marked restriction of functioning in the three functional areas.[14] Additionally, the Court finds it significant that no medical sources explicitly, or even implicitly, opined that Ede has such "marked" limitations. Accordingly, the Court concludes that Ede has failed to meet his burden of showing that he meets all the requirements of the "paragraph B" criteria under Listing §§ 12.02 and 12.04.

Therefore, having reviewed the entire record, the Court finds that Ede has not met his burden to show that he meets Listing §§ 12.02 and/or 12.04. *See Carlson*, 604 F.3d at 593; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria."). The Court further determines that there is substantial evidence in the record to support the ALJ's finding that Ede does not meet the criteria of Listing §§ 12.02(B) or 12.04(B). Even if inconsistent conclusions could be drawn on this issue, the Court

---

[12] *See* Ede's Brief (docket number 13) at 8-9 (Listing § 12.02); 10 (Listing § 12.04).

[13] *See id.*

[14] *See* Administrative Record at 16-21 (ALJ's thorough review of Ede's medical history and impairments).

upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. Listing § 11.03

Listing § 11.03 provides in pertinent part:

> 11.03 *Epilepsy--nonconclusive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. . . .*

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03. Ede asserts that he has been diagnosed with epilepsy in the past. He points to only three instances in the record where a diagnosis of epilepsy or notation of a history of epilepsy is present in the medical evidence.[15] Having thoroughly reviewed the record, the Court notes that the vast majority of the medical evidence in the record discusses Ede's history of a seizure disorder, involving primarily grand mal seizures, not petit mal, psychomotor, or focal seizures. Nevertheless, Ede maintains that "[f]ailure to consider [his impairments] under the 11.03 listing is a factual error, in that [he] should qualify under this listing. It is also reversible legal error. . . . [His impairments] should be considered under listing 11.03."[16]

The Commissioner responds that:

> Although he has been previously diagnosed with epilepsy, [Ede] does not meet the rest of the Listing. He argues that his seizures occur more frequently than merely once per week. But there is substantial evidence on the record as a whole to the contrary. After finding [Ede's] seizure disorder to be a severe impairment, the ALJ noted that [Ede's] seizures were managed by medication. In January 2009, [Ede] stated that his

---

[15] *See* Administrative Record at 291 (diagnosis of partial epilepsy in 2009); 310 (diagnosis of "epilepsy, i.e., G[rand] M[al] Seizure" in 2008); 327 (noting history of epilepsy in 2008).

[16] Ede's Brief (docket number 13) at 11.

> seizures were better-controlled than in the past. In March
> 2011, a physician noted that [Ede's] grand mal seizures were
> "under control with appropriate medication." Similarly, in
> December 2011, [Ede's] symptoms were "well-controlled
> recently," with no seizure activity for the previous few
> months. . . . Substantial evidence supports the conclusion that
> [Ede] does not experience seizures as frequently as he claims.

Ede's Brief (docket number 14) at 16-17. The Court agrees with the Commissioner.

Moreover, the record and the ALJ's decision supports the Commissioner's argument. For

example, in her decision, the ALJ found that:

> [Ede] has been managed on medication, which appeared to
> stabilize the frequency and severity of his seizures. . . .
> Treatment notes show an emergency room visit in February
> 2009 where [Ede] was brought in with combativeness and a
> suspected seizure; however, neurological examination was
> normal and his urinalysis was positive for benzodiazepines and
> marijuana. [He] had no other treatment for seizures until he
> was seen in the emergency room for another reported episode
> in March 2011. The note reflects that he tested positive again
> for marijuana at that time, had a preceding factor of sleep
> deprivation, and his Dilantin levels were subtherapeutic. He
> returned in July 2011, December 2011, and July 2012 for
> seizure activity. Laboratory testing at each of these visits
> again documented subtherapeutic levels of his anti-seizure
> medication and [Ede] was repeatedly counseled on medication
> compliance.

(Administrative Record at 17.) Thus, the Court concludes that Ede has failed to meet his

burden of showing that he meets all the requirements of Listing § 11.03. The Court

further concludes that the ALJ did not err by failing to address Listing § 11.03. *See*

*Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ

fails to explain why an impairment does not equal one of the listed impairments as long as

the overall conclusion is supported by the record. *See Pepper ex rel. Gardner v. Barnhart*,

342 F.3d 853, 855 (8th Cir. 2003); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir.

2001).").

Therefore, having reviewed the entire record, the Court finds that Ede has not met his burden to show that he meets Listing § 11.03. *See Carlson*, 604 F.3d at 593; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria."). The Court further determines that there is substantial evidence in the record to support the ALJ's finding that Ede does not meet the criteria of Listing § 11.03. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Mitigating Factors and Noncompliance

Ede argues that the ALJ failed to fully and fairly develop the record with regard to his noncompliance in taking his anti-seizure medication. Specifically, Ede argues that:

> [He] has been seeking treatment for his seizure disorder for several years. The record demonstrates that, due at least in part to financial barriers and psychological difficulties, he has had difficulty maintaining full compliance with his medication. However, these mitigating factors must be taken into account before essentially dismissing [his] disorder as tantamount to his voluntary failure to act. Without taking these factors into account when weighing evidence of noncompliance with treatment, the ALJ's finding is clear error.

Ede's Brief (docket number 13) at 14. Ede maintains that this matter should be remanded for further development and consideration of this issue.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*,

435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ addressed Ede's noncompliance with anti-seizure medication as follows:

> The objective medical evidence of record revealed a history of seizure disorder confirmed by abnormal electroencephalogram (EEG) at the University of Iowa Hospitals and Clinics in 2008. Neurological testing at that time could not confirm any true memory/cognitive issues, due to an unrevealing examination and very ill-defined symptoms reported by [Ede]. [He] has been managed on medication, which appeared to stabilize the frequency and severity of his seizures. . . . Treatment notes show an emergency room visit in February 2009 where [Ede] was brought in with combativeness and a suspected seizure; however, neurological examination was normal and his urinalysis was positive for benzodiazepines and marijuana. [He] had no other treatment for seizures until he was seen in the emergency room for another reported episode in March 2011. The note reflects that he tested positive again for marijuana at that time, had a preceding factor of sleep deprivation, and his Dilantin levels were subtherapeutic. He returned in July 2011, December 2011, and July 2012 for seizure activity. Laboratory testing at each of these visits again documented subtherapeutic levels of his anti-seizure medication and [Ede] was repeatedly counseled on medication compliance.

(Administrative Record at 17.) The ALJ also addressed Ede's alleged memory difficulties in her decision:

> Previously in 2008, [Ede] reported having severe memory loss as an ongoing problem and problems with depression and anxiety. However, a few months later he was unable to define this symptom stating, "I cannot remember what my memory

20

> symptoms are" and his provider indicated that it was unclear
> whether it was significantly affecting his life. He was able to
> remember 2/3 objects on the mental status examination on that
> date and the rest of his examination was relatively normal. . . .
> The psychiatric notes vacillate between a positive "organic
> brain syndrom" diagnosis and a rule out diagnosis for such,
> without any notable statements/testing/observations confirming
> difficulty with memory or executive functioning.

(Administrative Record at 17-18.)

In making the ultimate disability decision in this case, it is clear from the ALJ's decision that she thoroughly considered the issue of Ede's noncompliance with anti-seizure medication, including Ede's assertions that his mental impairments played a part in his noncompliance. Therefore, having reviewed the entire record, the Court finds that the ALJ fully and fairly developed the record with regard to issue of medication noncompliance. *See Cox*, 495 F.3d at 618. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.    *Dr. Piekenbrock's Opinions*

Ede argues that the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Piekenbrock. Specifically, Ede argues that the ALJ failed to properly weigh Dr. Piekenbrock's opinions. Ede also argues that the ALJ's reasons for discounting Dr. Piekenbrock's opinions are not supported by substantial evidence in the record. Ede concludes that this matter should be remanded for further consideration of Dr. Piekenbrock's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not

21

automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at

22

848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed Dr. Piekenbrock's opinions as follows:

> The psychiatric notes vacillate between a positive "organic brain syndrome" diagnosis and a rule out diagnosis for such, without any notable statements/testing/observations confirming difficulty with memory or executive functioning. The psychiatrist references an explosive "all or none" type response that is typical with organic brain syndrome, but session notes fail to reflect any incidences during the relevant period of this type of symptom/response. When [Ede] returned in March 2011, the psychiatrist state[d] [Ede's] depression, organic brain syndrome symptoms, and grand mal seizures were under control with appropriate medication and [Ede] was stable from a psychiatric standpoint. [He] was somewhat more distressed over finances, assistance with obtaining his seizure medications, and the disability process. June and October 2011 records show the psychiatrist's sweeping statements that [Ede] is unemployable and disabled, "not only because of his mood stability, which is very unstable, but also his mental functioning in an organic way." These generalizations are wholly contrary to the objective observations during the normal course of treatment in the bulk of Dr. Piekenbrock's care of [Ede].

(Administrative Record at 18.) In weighing Dr. Piekenbrock's opinions, the ALJ determined that:

> His treating psychiatrist stated in treatment records that [Ede] is in his opinion . . . "totally unemployable and disabled." The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. First of all, the opinion does not give specific reasons for inability to work or which diagnoses/symptoms

correspond to specific limitations in functioning. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Ede], and seemed to uncritically accept as true most, if not all, of what [he] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Ede's] subjective complaints. Although the doctor stated in his opinion that [Ede] was unable to engage in any work, it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations. The doctor issued an opinion concerning vocational issues, which he is not qualified to do; nor is he qualified to evaluate how those vocational issues concern the finding of disability for [Ede] under the Social Security Act and regulations. The doctor's opinion is without substantial support from the other evidence of record, including his own longitudinal treatment history of [Ede] that was routine and conservative management since 2009 with mild symptomologly and described as stable in terms of his psychological presentation during the entire relevant period, which obviously renders it less persuasive. The undersigned therefore declines to afford Dr. Piekenbrock's opinion controlling weight.

(Administrative Record at 20-21).

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Piekenbrock. Also, the Court finds the ALJ provided "good reasons" for rejecting Dr. Piekenbrock's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 4.    *Credibility Determination*

Ede argues that the ALJ failed to properly evaluate his subjective allegations of disability. Ede maintains that the ALJ's credibility determination is not supported by

substantial evidence. The Commissioner argues that the ALJ properly considered Ede's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good

reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Ede's subjective allegations of disability as follows:

> Although [Ede] has described symptoms and daily activities at the hearing that are fairly limiting, two factors weigh against considering these allegations to be strong evidence in favor of finding [Ede] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [Ede's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Ede's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Ede's] reported limited daily activities are considered outweighed by the other factors discussed in this decision.
>
> The level and severity of medical findings, however, do not correlate to a level of complete disabling impairment. [Ede] reported to his mental health provider in early 2012 only having one seizure every three months, which contradicts his hearing testimony. In turn, emergency room treatment notes document recurrent issues with substance abuse and medication compliance during recurrence of seizure activity. This

suggests that [Ede] would have better seizure control with adequate medication compliance. His mental health conditions were consistently described as stable and controlled well on medications. Although his psychiatrist notes explosiveness as being characteristic of an organic brain syndrome, [Ede] mentions this as an issue only once during the relevant period and in the context of it becoming symptomatic when off his Lexapro. At one point or another in the record, [Ede] has reported a myriad of daily activities consistent with the residual functional capacity detailed above. In disability forms, [Ede] denied problems with personal care. He does some indoor household chores, cuts grass, and shovels snow. He is able to navigate the community independently, reported shopping in stores, and indicated that he has no money to manage but can count change. Socially, he reported getting along well with others but not with authority figures. While [he] stated that he has never been fired or laid off from a job, this appears inconsistent with what he reported to his psychiatrist in October 2010 when he lost his maintenance/janitorial position. While [he] reported some problems with memory, attention and concentration, he noted that he can follow written and verbal instructions fairly well when he does not forget and mental status examination[s] failed to document any objective signs of memory compromise. . . . [Ede's] allegations about functional limitations are not credible and his information is not entirely consistent as noted above. The record as a whole indicates that [he] can handle daily responsibilities. His memory, attention, concentration, and pace may vary with his mood but are adequate for tasks not requiring sustained attention. The preponderance of evidence in the file indicates [Ede] is able to complete at least simple, repetitive tasks on a sustained basis.

[Ede] has not generally received the amount and type of medical treatment one would expect from a totally disabled individual, considering the relatively infrequent trips to the doctor for the allegedly disabling symptoms and significant gaps in [Ede's] history of treatment.

> As noted above, there have been some discrepancies in information reported by [Ede] to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities in functioning. While the inconsistent information provided by [Ede] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by [Ede] generally may not be entirely reliable. Therefore, [Ede's] credibility is eroded.

(Administrative Record at 19-20.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Ede's medical history, treatment history, functional restrictions, effectiveness of medications, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Ede's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Ede's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 5. *Hypothetical Question*

Ede argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Similarly, Ede also argues that the ALJ's hypothetical was incomplete and did not contemplate all of his

functional limitations. Ede maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Ede's testimony in determining Ede's impairments.[17] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ properly determined that Ede does not meet Listing §§ 12.02 or 12.04. Furthermore, the Court finds that the ALJ did not err in not

---

[17] *See* Administrative Record at 16-21.

considering whether Ede met Listing § 11.03 because substantial evidence supports the overall conclusion that Ede does not meet Listing § 11.03. The Court also finds that the ALJ fully and fairly developed the record in this matter, including consideration of Ede's noncompliance with his anti-seizure medication. Additionally, the Court determines that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Piekenbrock. Furthermore, the Court concludes that the ALJ properly determined Ede's credibility with regard to his subjective complaints of disability. Lastly, the Court finds that the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VI. ORDER*

1.   The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.   Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.   The Clerk of Court is directed to enter judgment accordingly.

DATED this ___8ᵗʰ___ day of September, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA